UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ROGER W. ANDERSON, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) CAUSE NO. 3:10-CV-233 PS |
| vs. | ) |
| | ) |
| JULIE LAWSON, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Roger W. Anderson, a *pro se* prisoner, was granted leave to proceed on a claim that Warden Julie Lawson housed him under inadequate and unsanitary conditions at the St. Joseph County Jail.[1] (DE 4.) Lawson now moves for summary judgment. (DE 33.)

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). I may not weigh conflicting evidence or make credibility determinations, both of which are functions of the jury. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). As the Seventh Circuit has

---

[1] A few months after this case was filed, Anderson was transferred from the jail to a state correctional facility. (DE 23.)

instructed, "summary judgment cannot be used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Here, Anderson claims that while he was housed at the jail he was required to sleep on a "filthy" mattress that was so worn it was "like sleeping on concrete"; he was routinely bitten by insects during the night; the showers were unusable because they were so hot they caused burns; and he was not given adequate hygiene items or clean clothes, blankets, and towels on a regular basis. (DE 4.) According to Anderson's complaint, these events began on or around May 9, 2010, when he was transferred to the medical unit at the jail due to a hip condition. (DE 1 at 3.)

In support of her motion for summary judgment, Lawson submits a report showing that the jail passed an inspection by Indiana Department of Correction ("IDOC") personnel on June 23, 2010. (DE 34-2 at 5-18.) In her view, this report—along with her affidavit attesting that the conditions met the standards specified in the report—conclusively demonstrates that conditions at the jail were constitutionally adequate during the time Anderson was housed there. (*See* DE 34, DE 34-2.) I disagree.

Aside from the fact that there was a six-week gap between the date Anderson claims the conditions arose and the inspector's visit to the jail, the inspection report does not address many of the specific complaints Anderson makes. For example, while the report states as a general matter that plumbing fixtures were "functional" and that inmates were given an opportunity to shower at least three times a week, it does not indicate that the inspector tested the showers to determine if they were excessively hot. (*See* DE 34-2 at 9, 10.) Similarly, while the report states that bedding was "adequate for the prevailing temperature," it does not refute Anderson's claim that he was required to sleep on the floor on a worn mattress that aggravated his hip condition.

2

(*See id.* at 7.) Likewise, simply because the inspector noted that the jail had a contract with an exterminator does not disprove Anderson's claim that there was an insect problem in his cell. (*See id.* at 9.) Indeed, construed in the light most favorable to Anderson, the fact that the jail had to call an exterminator supports his claim that there was a pest problem at the jail.

More fundamentally, however, compliance with state regulatory standards is not the same as compliance with federal constitutional standards. The report no more proves that conditions at the jail satisfied federal standards than a failing report would prove that they violated federal standards. *See, e.g., Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]he violation of [municipal] regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."); *Sobitan v. Glud*, 589 F.3d 379, 389 (7th Cir. 2009) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.") (citation omitted); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (liability under 42 U.S.C. § 1983 is premised on violation of federal standards, not state statutes or regulations). In short, the report showing compliance with IDOC general standards does not conclusively disprove Anderson's claims.

Aside from the inspection report, Lawson also submits an affidavit disavowing any knowledge of an inmate sleeping on the floor or the other conditions Anderson claims existed. (DE 34-2 at 1-4.) However, Anderson has submitted a response to the motion for summary judgment asserting that he was present when Lawson and the IDOC official were conducting the inspection; he claims that he pointed out his insect bites, his worn-out mattress on the floor, and his unclean clothing but they brushed off his concerns, telling him that jails were not meant to be

3

"comfortable."[2] (DE 38 at 2.) Deciding whose account is more credible is something I cannot do at the summary judgment stage.

Construing the evidence in the light most favorable to Anderson, a genuine issue of material fact remains regarding whether the conditions under which Anderson was housed violated constitutional standards. Accordingly, summary judgment is not appropriate.

For these reasons, the motion for summary judgment (DE 33) is **DENIED**. One final note. Prior to the filing of this motion, Anderson moved for appointment of counsel, and the motion was denied because Anderson made no attempt to obtain counsel on his own. (DE 32); *see Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Given the current posture of the case, Anderson is encouraged to renew his motion for appointment of counsel. If Anderson can demonstrate that he has made a reasonable attempt to obtain counsel on his own, I would be of the mind to grant a renewed motion to appoint trial counsel. This, and other topics, will be discussed at a telephonic status conference, the date of which will be set forth in a separate order.

**SO ORDERED**.

ENTERED: June 14, 2011.

/s Phillip P. Simon
Philip P. Simon, Chief Judge
United States District Court

---

[2] Although not in the form of an affidavit, the statements in Anderson's response are based on his own personal knowledge and presumably would be admissible through his own testimony at trial. *See* FED. R. CIV. P. 56(c)(2), (4).